IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MELVIN R. COBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11-CV-230 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff Melvin Cobb brought this action pursuant to Sections 205(g) and 1631(c)(3) of

the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying his claims for

Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II

and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative

record has been certified to the Court for review.

**I.    PROCEDURAL HISTORY**

Mr. Cobb filed his applications for Disability Insurance Benefits and Supplemental

Security Income on February 12, 2007, alleging a disability onset date of April 23, 2006. (Tr. at

119-128.)[2] His applications were denied initially (Tr. at 45-46) and upon reconsideration (Tr. at

47-48). Thereafter, he requested a hearing de novo before an Administrative Law Judge

("ALJ"). (Tr. at 75-76.) After a hearing, (Tr. at 17), the ALJ determined that Mr. Cobb was not

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

disabled within the meaning of the Act. (Tr. at 22-23.) The Appeals Council denied Mr. Cobb's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 6-9.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). "[T]he scope of [the court's] review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted). The issue before this Court "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "The Commissioner uses a five-step process to evaluate disability claims." *Hancock*, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.*

## III. THE ALJ'S DECISION

The ALJ found at step one that Mr. Cobb had not engaged in "substantial gainful activity" since his alleged onset date. At step two, the ALJ further determined that Mr. Cobb

suffered from seven severe impairments: hemoptysis, hypertension, obstructive lung disease, borderline IQ, depression, anxiety, and a gunshot wound to his right foot. (Tr. at 19.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Accordingly, the ALJ assessed Mr. Cobb's RFC and determined that he could perform medium work with further respiratory and mental limitations. (Tr. at 21.) Because Mr. Cobb's past relevant work as a dishwasher "does not require the performance of work-related activities precluded by" his RFC, the ALJ found that Mr. Cobb could return to his past relevant work under step four of the analysis and therefore was not disabled. (Tr. at 22.)

## IV.   CONTENTIONS and DISCUSSION

Mr. Cobb contends that there is not substantial evidence to support the ALJ's findings regarding Mr. Cobb's physical RFC, mental RFC, and credibility. (Pl.'s Br. [Doc. #11] at 2.) The Court finds that, given the record before it and the cursory nature of the ALJ's decision, it is impossible to discern whether the Commissioner's physical RFC findings are supported by substantial evidence. In particular, the ALJ's analysis completely omits two years of medical evidence and any mention of Mr. Cobb's foot impairment or hypertension. Further, the decision presents only brief accounts of Mr. Cobb's lung impairments which fail to address the evidence contrary to the ALJ's ultimate finding of no disability.

An ALJ need not discuss every piece of evidence in making his RFC determination. *See, e.g., Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). However, he must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford [the plaintiff] meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation

3

required," as does a selective discussion of "only that evidence that favors [the ALJ's] ultimate conclusion." *Diaz*, 55 F.3d at 307 (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). Because the ALJ's analysis in the present case fails to "build an accurate and logical bridge from the evidence to [his] conclusions," or to allow the Court to trace the path of his reasoning in any meaningful way, remand is appropriate.

The ALJ stated that his RFC assessment "is supported by the evidence of record, the State Agency Medical Consultants['] opinions, and claimant's activities." (Tr. at 22.) However, the ALJ's decision does not recount any physical findings of the state agency physicians, and it provides only scant references to the available medical evidence. Notably, the two RFC assessments provided by the state agency physicians address no medical evidence after February 2007 and June 2007, respectively. (*See* Tr. at 241, 356.) Moreover, the earlier of the two assessments does not address Mr. Cobb's pulmonary complaints at all, as Mr. Cobb only added allegations of pulmonary impairments on June 15, 2007, when he requested reconsideration of his claims. (*Id.*) Compounding this problem, the ALJ references only one physical exam after June 2007, a "normal" exam on June 29, 2009. (Tr. at 22) (citing Tr. at 475).

Defendant contends that the ALJ's failure to mention any evidence from the intervening two years is inapposite, since "the medical evidence from 2008 and 2009 shows that [Mr. Cobb] could perform a range of medium work." (Def.'s Br. [Doc. #15] at 9.) In making this argument, Defendant notes "several occasions throughout 2009" on which Mr. Cobb did not report cough, wheezing, or dyspnea, several other occasions on which Mr. Cobb did not report chest pain or discomfort, and one occasion on which Mr. Cobb did not report shortness of breath. (*Id.*) The tone of this challenge mirrors that of the ALJ, whose decision references a single, "normal" CT scan of the chest in March 2007 while ignoring pervasive evidence of Mr. Cobb's continuing

pulmonary problems.  In fact, Mr. Cobb reported cough (Tr. at 463, 465, 467, 469, 471),

wheezing (Tr. at 461), dyspnea (Tr. at 327, 330, 461, 463, 465, 467, 469, 471), and chest pain

(Tr. at 327, 478, 479) throughout the period in question.  Significantly, he consistently reported

dyspnea with exertion and reported at times that it was increasing (Tr. at 465, 467, 469, 471) or

occurring "either at rest or on exertion" (Tr. at 330).  Objective findings including diminished

breath sounds (Tr. at 327, 462, 466, 468, 472), significantly increased RV, FRC, and TLC

consistent with dynamic hyperinflation and air trapping, spirometry consistent with a moderate

obstructive ventilatory defect, i.e., chronic bronchitis or asthma, and a complete lack of response

to inhaled bronchodilators (Tr. at 343) support his complaints.

Overall, the medical evidence from mid-2007 onward shows that Mr. Cobb suffered

continuing, or arguably worsening, pulmonary symptoms, despite his greatly-reduced smoking

during this time period.  (Tr. at 327, 330.)  Nevertheless, the ALJ did not address Mr. Cobb's

pulmonary symptoms beyond his citation to a normal CT scan or address the potential limitations

from those symptoms at all.  He also did not mention any findings of Mr. Cobb's treating

pulmonology specialists or any medical sources other than the state agency physicians.  Given

the timing of the state agency assessments, they alone cannot provide a basis for the ALJ's

conclusions regarding Mr. Cobb's pulmonary complaints.

Defendant contends that the RFC's limitation to less-than-frequent exposure to fumes,

dust, and other inhaled irritants renders any error harmless.  The Court cannot agree.  The ALJ

drew this restriction directly from the second state agency physician's assessment, an opinion

which does not take the copious medical evidence of Mr. Cobb's pulmonary impairment since

June 2007 into consideration.

5

In short, it appears that the ALJ "fail[ed] to consider an entire line of evidence," or, at the very least, winnowed down the evidence to only those facts which supported his finding of no disability. *Diaz*, 55 F.3d at 307. Such an approach is impermissible. A decision which fails to consider conflicting evidence at all is not supported by substantial evidence and was not reached based upon a correct application of the relevant law. *Craig*, 76 F.3d at 589.

Similar problems exist with the ALJ's treatment of Mr. Cobb's foot impairment. The administrative decision never mentions this impairment at all, other than recounting that Mr. Cobb's "gait, sensory[,] and musculoskeletal exam were all normal" on two occasions in mid-2007. (Tr. at 22.) However, these perfunctory notations came, not during an exam of Mr. Cobb's feet, but during appointments with Mr. Cobb's primary care providers to address, respectively, his recent hospitalization for hemoptysis and complaints of depression. (Tr. at 318, 319.) In contrast, the record chronicles fourteen podiatrist visits between July 23, 2007 and March 20, 2009, which indicate myriad musculoskeletal abnormalities, limited range of motion, and chronic pain in both of Mr. Cobb's feet related to plantar fasciitis. (Tr. at 388-89, 391, 401, 404-05, 407-08, 410-11, 416-17.) These records further indicate that Mr. Cobb received only a limited degree of relief from injections, supportive footwear, physical therapy, and pain medications. (*See generally* Tr. at 384-414.) Notably, Mr. Cobb had to suspend his pain medications when he developed bleeding in his lungs. (Tr. at 412, 413.) Although Defendant contends that the "[x]-rays of both feet taken in August 2007 showed no deformity or significant evidence of traumatic, metabolic, or infectious bone disease" (Def.'s Br. [15] at 8), this summation grossly mischaracterizes and oversimplifies the evidence. In fact, the record in question states that no deformities were apparent on the x-rays "with exception to those findings described below," which, in this case, included decreased calcaneal inclination and accessory

navicular bones in both feet and calcification at the insertion of the peroneal brevis on the right foot. (Tr. at 414.) These findings support both the musculoskeletal deformities noted by the podiatrists upon exam (Tr. at 388, 391, 401, 404, 407, 410-11, 416) and Mr. Cobb's allegations of chronic foot pain. As with Mr. Cobb's pulmonary impairments, the podiatry records were never considered by a state agency physician and played no role in the RFCs formulated in 2007.

Because the ALJ mentions no other specific medical evidence or providers from which he draws his opinion of Mr. Cobb's abilities, the Court cannot conclude that the RFC set out in the ALJ's decision was supported by substantial evidence. In short, the Court is unable to trace the path of the ALJ's reasoning in any meaningful way based on the record before it. Accordingly, remand is required.[3]

IT IS THEREFORE **ORDERED** that the Commissioner's decision finding no disability be and is **REVERSED**, and that the matter be and is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Plaintiff's RFC. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] is **DENIED**, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] is **GRANTED**. To the extent that Plaintiff's motion seeks an immediate award of benefits, it is **DENIED**.

This the 27th day of November, 2013.

UNITED STATES DISTRICT JUDGE

---

[3] The Court declines consideration of the additional issues raise by Mr. Cobb at this time.